**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
STATE OF MISSOURI

| | |
|---|---|
| RANDY TRAMS,       ) | |

RANDY TRAMS,     )
         )
    Plaintiff,     )
         )    **JURY TRIAL DEMANDED**
    v.       )
         )    Case No.: 4:23-cv-01322-HEA
PB&J RESTAURANTS, INC.   )
    <u>Serve Registered Agent at:</u>   )
    National Registered Agents, Inc.  )
    120 S. Central Ave.   )
    Clayton, MO 63105,   )
         )
    and,     )
         )
THE FALCONS GROUP d/b/a TWIN  )
PEAKS MAPLEWOOD,   )
    <u>Serve at:</u>    )
    2351 Maplewood Commons Dr.  )
    St. Louis, MO 63143,   )
         )
    and,     )
         )
**ST. LOUIS LODGE VENTURES**  )
**II LLC,**    )
    **<u>Serve Registered Agent at:</u>**  )
    **National Registered Agents, Inc.**)
    **120 S. Central Ave.**   )
    **Clayton, MO 63105,**   )
         )
    Defendants.   )

<u>**PETITION FOR DAMAGES**</u>

COMES NOW Plaintiff Randy Trams ("Plaintiff"), by and through undersigned

counsel, and for his Petition, hereby states to this Honorable Court as follows:

- 1 -

## PARTIES

1.      Plaintiff is a natural person who resides, and at all times relevant herein resided, in the State of Missouri.

2.      Defendant PB&J Restaurants Inc. ("Defendant PB&J") is, and at all times relevant herein was, a company incorporated under the laws of and in good standing with the State of Missouri with its principal office address located at 10220 W. 87th St. Overland Park, Kansas 66212-4674, conducting continuous and systematic business in the State of Missouri.

3.      Defendant The Falcons Group d/b/a Maplewood's Twin Peaks ("Defendant Falcons," and sometimes collectively referred to as "Defendants" herein) is, and at all times relevant herein was, a non-profit corporation incorporated under the laws of the State of Missouri; conducting continuous and systematic business in the State of Missouri from its location at Maplewood Twin Peaks restaurant at 2351 Maplewood Commons Dr., St. Louis, MO 63143.

**4.      Defendant St. Louis Lodge Ventures II LLC ("Defendant SLLV," and sometimes collectively referred to as "Defendants" herein) is, and at all times relevant herein was, a company incorporated under the laws of and in good standing with the State of Missouri with its principal office address located at 10220 W. 87th St. Overland Park, Kansas 66212-4674, conducting continuous and systematic business in the State of Missouri.**

- 2 -

## JURISDICTION AND VENUE

5.      The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

6.      Defendants are incorporated in the State of Missouri by doing business in the state and Plaintiff is domiciled in Missouri, giving this Court jurisdiction over all parties.

7.      Plaintiff's causes of action arise out of unlawful discriminatory and retaliatory practices that occurred, as alleged herein, in St. Louis County, Missouri, where Defendants were located while operating the Maplewood Twin Peaks restaurant.

8.      The acts or omissions that give rise to this cause occurred in St. Louis County, Missouri and Plaintiff was damaged by Defendants in St. Louis County, Missouri, making this the proper venue.

9.      On September 8, 2023, the Missouri Commission on Human Rights (the "MCHR") issued to Plaintiff a letter indicating his right to bring a civil action against Defendant PB&J within ninety (90) days of such notice.

10.     On September 14, 2023, MCHR issued Plaintiff a letter indicating his right to bring a civil action against Defendant Falcons within ninety (90) days of such notice.

**11.     On November 2, 2023, MCHR issued Plaintiff a letter indicating his right to bring a civil action against Defendant SLLV within ninety (90) days of such notice.**

12.     This action is hereby commenced within ninety (90) days of the MCHR's issuance of Plaintiff's letters indicating the right to bring a civil action against Defendants within ninety (90) days of such notice.

13.     Thus, jurisdiction and venue are proper in St. Louis County, Missouri, pursuant to RSMo. §§ 508.010 and 213.111.1.

## ADMINISTRATIVE PROCEDURES

14.     The allegations contained within all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

15.     On or about December 7, 2022, Plaintiff timely filed with the MCHR a Charge of Discrimination (the "Charge") alleging violations by Defendant PB&J and **Defendant SLLV** of the Missouri Human Rights Act, RSMo. § 213.010 *et seq*. (the "MHRA"), in discriminating against Plaintiff because of his association with his close family member's disability and/or Defendants' perception of him related to the disability.

16.     After being terminated, Plaintiff timely filed a second Charge with the MCHR alleging violations by Defendants of the MHRA in discriminating against Plaintiff because of his association with his close family member's disability and/or Defendants' perception of him related to the disability.

17.     The aforementioned Charges provided the MCHR sufficient opportunity to investigate the full scope of the controversy between Plaintiff and Defendants, and accordingly, the sweep of this action is within the broad scope that could reasonably be expected to have grown out of the Charges.

18.     On September 8, 2023, September 14, 2023, **and November 2, 2023**, the MCHR issued to Plaintiff the Notice of Right to Sue, indicating Plaintiff's right to file a civil action against Defendants related to the allegations contained within the Charge within ninety (90) days of the issuance of such notice.

19.     Thus, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this action, which is hereby timely filed within all applicable statutes of limitations.

Factual Allegations Common to All Counts

20.     The allegations contained within all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

21.     Defendant PB&J previously owned St. Louis Lodge Ventures II LLC d/b/a Maplewood's Twin Peaks conducted business in St. Louis County, Missouri, before it sold the business to Defendant Falcons.

**22.     Upon information and belief, Defendant PB&J and Defendant SLLV operated the Maplewood's Twin Peaks restaurant, together.**

23.     Defendant Falcons took over Maplewood's Twin Peaks (the "restaurant") in St. Louis County, Missouri, on or about January 30, 2023.

24.     Upon information and belief, Defendants were in the process of effectuating the transfer of the restaurant from at least September 9, 2022, to January 30, 2023, for all times relevant herein.

25.     Upon information and belief, Defendants entered into a contract and/or purchase agreement to effectuate the sale of the restaurant to Defendant Falcons.

26.     Upon information and belief, Defendants both employ fifty (50) or more employees engaged in commerce or activity affecting commerce in twenty (20) or more calendar work weeks during Plaintiff's employment.

27.     On or about April 5, 2021, Plaintiff became employed by Defendant **PB&J and Defendant SLLV** as an assistant manager at its 2351 Maplewood Commons Dr., St. Louis, Missouri 63143 location. Plaintiff was a general manager when Defendants terminated his employment.

28.     For all times relevant herein, Plaintiff was the primary caretaker of his disabled mother.

29.     Plaintiff's mother suffered from complications from a stroke and heart attack, and Plaintiff provided his mother with medical assistance, supervision, and helped transport her to medical appointments for her disability.

30.     Plaintiff's mother's disability was both a physical and mental impairment that substantially limited one or more of her major life activities, including but not limited to, walking and memory.

31.     Plaintiff's role of caring for his disabled mother did not interfere with his employment for Defendants with or without reasonable accommodations, as needed, to transport his mother to doctor's appointments.

32.     For all times relevant herein, Defendants were aware that Plaintiff required reasonable accommodations with his employment to care for his mother because of her disability.

33.     Defendant PB&J gave Plaintiff difficulty and/or negative pushback each time he requested reasonable accommodations to care for his mother with her disability.

- 6 -

34.     As a result, Plaintiff requested Family and Medical Leave Act ("FMLA") coverage so he could use the job-protected leave of up to 12 unpaid weeks to get his mother to medical appointments and provide additional care, as needed.

35.     On or about September 3, 2022, Plaintiff requested Defendant PB&J **and Defendant SLLV** to provide information for how apply for FMLA benefits to care for his mother.

36.     Prior to taking FMLA, Plaintiff worked at least 1,250 hours for Defendant **SLLV** during the rolling 12-month period immediately preceding requesting FMLA leave.

37.     Defendant was reluctant to provide this information, and Plaintiff had to follow up with Defendant PB&J for approximately two weeks before finally receiving FMLA paperwork.

38.     On or about September 30, 2022, Defendant PB&J **and/or Defendant SLLV** advised Plaintiff that he would not be able to utilize intermittent FMLA for care of his mother's disability, without any further explanation for why it would not allow him to use FMLA he was eligible to use.

39.     On or about September 30, 2022, Plaintiff also requested reasonable accommodations for his mother's disability in the form of having a limited work schedule because it would not allow him to use intermittent FMLA.

40.     Defendant PB&J **and/or Defendant SLLV** also stated it would require Plaintiff to provide at least one month of advance notice if he wanted to take intermittent FMLA.

41.     There is no actual notice requirement under FMLA which would require Plaintiff to provide advance notice before taking intermittent FMLA.

42.     For all times relevant herein, Plaintiff was eligible to receive FMLA related to his employment for Defendant PB&J **and/or Defendant SLLV**.

43.     Defendant PB&J's representatives would mock Plaintiff for his use of FMLA and make discriminatory remarks to him and about him for his use of FMLA. For example, when Plaintiff submitted a request to use available FMLA coverage, Defendant PB&J's representatives would make remarks to each other such as "good luck" dealing with Plaintiff's FMLA request and to "enjoy" coordinating his use of FMLA. Such statements were made to sarcastically mock Plaintiff and were circulated to several of Defendant PB&J's representatives and employees.

44.     Defendant PB&J and **Defendant SLLV** interfered with Plaintiff's use of FMLA on more than one occasion.

45.     Due to Defendant PB&J's and **Defendant SSLV's** FMLA interference, Plaintiff was required to hire an expensive aid to assist his mother with her medical needs when Defendant PB&J would not allow him to take FMLA because he had not scheduled leave one month in advance.

46.     On or about October 12, 2022, Plaintiff made a protected complaint for disability discrimination by association and FMLA interference and retaliation due to Defendant's negative actions toward him for simply requesting FMLA.

47.     Immediately after making his protected complaint, Defendant PB&J retaliated against Plaintiff by giving him a written reprimand via email for untrue "lack of

presence" allegations because Plaintiff had requested a flexible and/or limited work schedule when Defendant PB&J improperly refused to allow him to use FMLA.

48.     Defendant PB&J also falsely accused Plaintiff of stealing cash from the restaurant after he made a protected complaint. Upon information and belief, Defendant did not even investigate this false allegation it made to start creating a history of poor and/or questionable work performance against Plaintiff.

49.     Prior to making a protected complaint for discrimination and requesting to use intermittent FMLA, Plaintiff had only positive performance reviews from Defendant PB&J.

50.     Upon information and belief, Defendant PB&J **and Defendant SLLV** only made these baseless "visibility" complaints against Plaintiff when he was physically not present from using FMLA.

51.     Upon information and belief, Defendant PB&J **and Defendant SLLV** did no investigation into Plaintiff's claims for discrimination and FMLA interference because the discrimination only became more severe and pervasive, leading up to termination.

52.     On a date better known to Defendants, Defendant PB&J **and Defendant SLLV** contracted with Defendant Falcons to purchase and take over the restaurant.

53.     During the time period from Defendant Falcons' inquiry into purchasing the restaurant until January 30, 2023, Defendant Falcons was involved in day-to-day restaurant activities and management to coordinate a smooth transition when it took over the restaurant.

54.     Prior to Plaintiff making a complaint for discrimination and FMLA interference, one or more owners of the restaurant informed Plaintiff that he would like to keep the entire restaurant management team together and continue Plaintiff's employment. Defendant Falcons' representative provided his personal contact information to Plaintiff and asked him to submit his resume.

55.      On December 15, 2022, Plaintiff filed a Charge with the EEOC against Defendant PB&J charge nos. 560-2023-00562; 560-2023-00593, due to Defendant PB&J's ongoing interference with his use of FMLA.

56.     On or about December 19, 2022, Plaintiff learned that his direct supervisor, Steven Gentry ("Gentry") was mocking him for his use of FMLA and sharing his private and confidential health information to other employees within the restaurant that did not need to know Plaintiff's private health information.

57.     On December 19, 2022, Plaintiff reported Gentry's discriminatory and harassing conduct to Defendant PB&J. Upon information and belief, Defendant PB&J **and Defendant SLLV** did not take any actions on Plaintiff's behalf to investigate Plaintiff's claims or instruct Gentry to cease his harassment of Plaintiff.

58.     Defendant PB&J's response to Plaintiff's reports against Gentry for discrimination and harassment was to ask if Plaintiff had access to Gentry's company emails.

59.     Defendant PB&J **and Defendant SLLV** admitted Gentry's discriminatory conduct was inappropriate and against Defendant's policies; however, he remained employed with both Defendants after his unlawful actions.

60.     On or about January 18, 2023, representatives of Defendant Falcons again reassured Plaintiff that it wanted to retain all of Defendant PB&J's **and Defendant SLLV's** management team when it continued running the restaurant.

61.     On a date better known to Defendants, Plaintiff's Charge was disclosed to Defendant Falcons.

62.     Shortly after Plaintiff filed his Charge, he was informed that his employment would not be continued by Defendant Falcons once it took over full restaurant operations.

63.     Defendant Falcons did not provide any legitimate business reason for its refusal to continue Plaintiff's employment.

64.     Notably, Plaintiff was the only member of management that Defendant Falcons did not continue employing when it continued restaurant operations after January 30, 2023.

65.     On or about January 26, 2023, Defendant PB&J **and Defendant SLLV** terminated Plaintiff's employment and would not provide a reason therefor.

66.     Plaintiff was terminated separately by both Defendants, and he did not abandon his employment.

67.     Upon information and belief, Plaintiff was marked by Defendants in their system as involuntarily terminated and "not eligible" for rehire, even though Plaintiff was not terminated for any misconduct or reason provided by Defendants.

68.     On the date that Plaintiff was terminated, Defendant Falcons was actively hiring for new managers.

- 11 -

69.     Upon information and belief, Defendants terminated Plaintiff's employment because he engaged in protected activities by filing a Charge against the restaurant and using FMLA.

70.     Upon information and belief, Plaintiff was joint employed by both Defendants due to the nature of his employment and scheduled work shifts for when Defendant Falcons was involved in business operations prior to Plaintiff's termination and its purchase of the restaurant.

71.     At the time of his termination, there were open and available job positions that Defendants chose not to place Plaintiff in.

72.     As of the date of the filing of this Petition, Defendants have also refused to even interview or follow up with Plaintiff for open positions he applied for that he was qualified for.

73.     On or about February 9, 2023, Plaintiff sent a written Missouri Service Letter Request ("Service Letter") to Defendant PB&J.

74.     The service letter was sent via Certified U.S. First-Class mail with specific reference to the Missouri Service Letter Statute.

75.     On or about March 17, 2023, Defendant responded to Plaintiff's Service Letter.

76.     In its response, Defendant PB&J stated an untrue reason for why Plaintiff's employment was terminated and falsely claimed that Plaintiff "abandoned" his position.

77.     On or about January 30, 2023, Plaintiff applied for open and available management positions Defendant Falcons was actively hiring for online. Some of these positions were for different restaurants Defendant Falcons owns.

78.     Defendant Falcons did not consider Plaintiff for employment after his applications, and it did not even take time to interview him.

79.     After his termination, Plaintiff received unemployment benefits from the Missouri Department of Labor.

80.     Plaintiff would not have received unemployment benefits if he was terminated for any misconduct.

81.     Defendants would have been able to contest Plaintiff's application for unemployment benefits if he was actually fired for any cause.

82.     As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered, and continues to suffer, and will in the future suffered irreparable damages, including but not limited to embarrassment, fear, humiliation, stress, and other garden variety emotional distress.

## COUNT I
## DISABILITY DISCRIMINATION

83.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

84.     Plaintiff is, and at all times relevant herein was associated with a person with a disability as contemplated by the MHRA, as he cared for his mother that suffers one or more physical impairments that substantially limit one or more of her major life activities.

85.     Plaintiff requested use of FMLA to care for his mother's disability.

86.     Plaintiff requested reasonable accommodations to have a flexible work schedule to care for his mother's disability-related medical needs.

87.     Plaintiff's requests for accommodation did not interfere with his performance of employment with or without reasonable accommodation.

88.     As a person associated with his mother's disability, Plaintiff is a member of a class of persons protected by the MHRA.

89.     Defendant PB&J is an "employer," for all times relevant herein, as defined by the MHRA.

90.     **Defendant SLLV is an "employer," for all times relevant herein, as defined by the MHRA.**

91.     Defendant Falcons is an "employer," for all times relevant herein, as defined by the MHRA.

92.     Plaintiff requested a reasonable accommodation for his mother's disability by allowing Plaintiff to have a flexible schedule and/or take intermittent FMLA, as needed.

93.     Plaintiff could have performed the essential functions of his employment with and without these accommodations.

94.     Said request was reasonable and could have been made by Defendants without significant and/or undue hardship.

95.     Defendants terminated Plaintiff's employment rather than accommodate Plaintiff's mother's disability or even engage in the interactive process to do so.

96.     Prior to taking FMLA leave for his disability, Plaintiff engaged in no conduct to give rise to termination.

97.     Plaintiff's mother's disability and request for accommodations were motivating factors in Defendants' decisions to terminate his employment rather than accommodate his request for a reasonable accommodation and continue his employment.

98.     Defendants refused to provide a legitimate, non-discriminatory reason for Plaintiff's termination despite being sent a Service Letter request because there was no legitimate and non-discriminatory reason to terminate Plaintiff.

99.     Defendants' termination of Plaintiff's employment was an adverse employment action.

100.    Plaintiff's mother's disability and/or Defendant's perception of his association with her disability, was a motivating factor for Defendants' adverse actions against Plaintiff, including but not limited to their refusal to accommodate Plaintiff's requests for accommodations and/or the termination of Plaintiff's employment.

101.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

102.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related compensatory damages.

103.    Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided by RSMo. § 213.111.2.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendants for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT II
## RETALIATION

104.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

105.    Plaintiff's mother he cared for has a "disability," and was so at all times relevant herein, as defined by the MHRA.

106.    Defendants are "employers," for all times relevant herein, as defined by the MHRA.

107.    Plaintiff requested a reasonable accommodation of his disability by allowing Plaintiff to have a flexible schedule to care for his mother and/or take intermittent FMLA, as needed.

108.    On or about October 12, 2022, based upon his treatment by Defendants while trying to use FMLA leave, Plaintiff made a protected complaint for disability discrimination by association, retaliation, FMLA interference and retaliation.

109.    By making a request for reasonable accommodations and protected complaint, Plaintiff participated in a protected activity under the MHRA.

110.    Such accommodations were reasonably available for Defendants to provide to Plaintiff without undue burden.

111.    Rather than accommodating Plaintiff or even engaging in the interactive process, Defendants terminated his employment.

112.    Defendants' termination of Plaintiff's employment was an adverse employment action.

113.    Prior to taking FMLA and making a protected complaint, Plaintiff engaged in no conduct to give rise to his termination.

114.    Plaintiff's request for accommodation of his mother's disability and protected complaint for disability discrimination was a motivating factor for Defendants' adverse actions against Plaintiff, including but not limited to their refusal to accommodate Plaintiff's requests for accommodation and/or termination of Plaintiff's employment.

115.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

116.    As further discrimination and retaliation against Plaintiff, Defendants also refused to interview Plaintiff for open positions that he applied for.

117.    Defendants did not contest Plaintiff's application for unemployment benefits after his termination, which they could have done if he was actually fired for cause.

118.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related damages.

119.    Plaintiff is entitled to recover reasonable attorneys' fees from Defendants, as provided by RSMo. § 213.010 *et seq*.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendants for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT III
## SERVICE LETTER VIOLATION
### *In violation of RSMo. § 290.140*

120.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

121.   Defendant PB&J **and Defendant SLLV are employers** within the meaning of the Missouri Service Letter Statute, RSMo. § 290.140, and employed more than seven (7) employees for all times relevant herein.

122.   Plaintiff was employed by Defendant PB&J **and Defendant SLLV** for a period longer than ninety days, thus satisfying the requirements of the statute.

123.   On or about February 9, 2022, Plaintiff sent a written Service Letter to **Defendant SLLV** via certified U.S. First Class Mail with specific reference to the Missouri Service Letter Statute.

124.   The Service Letter was delivered to and signed for by **Defendant SLLV**.

125.   On or about March 17, 2023, **Defendant SLLV** provided an improper response to Plaintiff's Service Letter Request.

126.   In its response to Plaintiff's Service Letter, **Defendant SLLV** did not state the true and accurate reason for how Plaintiff's employment with Defendant ended.

127.   **Defendant SLLV** falsely stated that Plaintiff abandoned his job position in its response.

128.   Plaintiff was fired by **Defendant SLLV** on January 26, 2023, when Defendant Falcons informed him it would not continue his employment after January 30, 2023.

129.   Upon information and belief, **Defendant SLLV's** failure to provide Plaintiff with a Missouri Service Letter setting forth the true and accurate reason for the end of employment, as required by Missouri Law, was done with intentional evil motive or in reckless disregard for the rights of Plaintiff.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against **Defendant SLLV** for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

### COUNT IV
### FMLA INTERFERENCE
*Violation of 29 U.S.C. § 2615*

130.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

131.   For all times relevant herein, Defendants each employed more than fifty (50) employees engaged in commerce or activity affecting commerce in twenty (20) or more calendar weeks during Plaintiff's employment.

132.    At all times pertinent herein, Defendants each were "employers" subject to 29 U.S.C. § 2601 *et seq.*, commonly known as the Family and Medical Leave Act or FMLA.

133.    Prior to taking FMLA, Plaintiff worked at least 1,250 hours for Defendants during the rolling 12-month period immediately preceding requesting FMLA. These 1,250 hours were worked in an office or worksite at which 50 or more employees were employed.

134.    Therefore, for all times relevant herein, Plaintiff was an eligible employee under the FMLA and entitled to FMLA leave.

135.    Plaintiff's request for FMLA leave was related to his mother's disability.

136.    Plaintiff followed Defendants' policies and requirements for taking FMLA.

137.    Upon returning from FMLA intermittent leave, Defendant PB&J **and Defendant SLLV** allowed its employees to mock Plaintiff for taking FMLA, without consequence.

138.    Defendant PB&J **and Defendant SLLV** also started reprimanding Plaintiff for not being "present" at Defendant's restaurant when he was out on FMLA.

139.    Plaintiff was "written up" and disciplined while out on FMLA leave for not being "present," or "visible" even though he was out on FMLA leave at the times of the untrue allegations.

140.    Prior to taking intermittent FMLA, Plaintiff only had positive work performance reviews.

141.     For example, during his employment Defendant PB&J **and Defendant SLLV** interfered with Plaintiff's use of intermittent FMLA by requiring him to schedule FMLA leave at least one month in advance, which was not always possible.

142.     Defendants' interference with Plaintiff's FMLA leave was in direct violation of 29 U.S.C. § 2615, which prohibits any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise the use of FMLA.

143.     Upon information and belief, Defendant Falcons chose not to continue Plaintiff's employment due to his use of intermittent FMLA.

144.     Plaintiff was the only member of management that did not have his employment continued. Upon information and belief, he was the only member of management that had intermittent FMLA.

145.     As a direct and proximate result of Defendants' FMLA interference and refusal to allow Plaintiff to work after FMLA leave, Plaintiff has incurred past loss of benefits and wages, continues to incur a loss of benefits, and will incur a loss of benefits in the future.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendant**s** for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT V
## FMLA INTERFERENCE

146.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

147.    For all times relevant herein, Defendants each employed more than fifty (50) employees engaged in commerce or activity affecting commerce in twenty (20) or more calendar weeks during Plaintiff's employment.

148.    At all times pertinent herein, Defendants were both "employers" subject to 29 U.S.C. § 2601 *et seq.*, commonly known as the Family and Medical Leave Act or FMLA.

149.    Prior to taking FMLA, Plaintiff worked at least 1,250 hours for Defendants during the rolling 12-month period immediately preceding requesting FMLA. These 1,250 hours were worked in an office or worksite at which 50 or more employees were employed.

150.    Therefore, for all times relevant herein, Plaintiff was an eligible employee under the FMLA and entitled to FMLA leave.

151.    Plaintiff's request for FMLA leave was related to his mother's disability.

152.    Plaintiff followed Defendants' lawful policies and requirements for taking FMLA.

153.    Defendant PB&J **and Defendant SLLV** created its own burdensome FMLA notice requirements, which were not lawful to enforce against Plaintiff when he could not provide at least one month of advance notice for taking FMLA.

154.    Plaintiff's right to take FMLA leave was statutorily protected.

155.    Defendants were aware that Plaintiff took FMLA leave and that he was eligible and entitled to take FMLA leave.

156.    Despite being eligible and entitled to take FMLA leave, Defendants engaged in actions that contradicted Plaintiff's statutory rights and/or interrupted his use of FMLA.

157.    After Plaintiff utilized intermittent FMLA leave, Defendant Falcons chose to end Plaintiff's employment.

158.    FMLA requires a covered employer to place an employee that took FMLA back in the same or similar work position upon their return to work, and it cannot retaliate against him for simply using FMLA.

159.    At the time of his termination, there were other open management positions available that Defendants chose not to place Plaintiff in, as required by FMLA.

160.    Upon information and belief, Plaintiff's termination was causally related to taking FMLA for his mother's disability.

161.    Plaintiff was the only member of management Defendant Falcons did not continue to employ.

162.    Defendants' termination of Plaintiff was without any just cause.

163.    Defendants did not contest Plaintiff's application for unemployment benefits, which they could have done if he was actually terminated for cause.

164.    Defendants' termination of Plaintiff was in direct violation of 29 U.S.C. § 2615 which prohibits such conduct.

165.    Upon information and belief, Defendants created false performance allegations of Plaintiff not being "present" during Plaintiff's FMLA leave to fabricate justification for termination.

166.    As a direct and proximate result of Defendants' FMLA retaliation and refusal to allow Plaintiff to return to work after intermittent FMLA leave, Plaintiff has incurred past loss of benefits and wages, continues to incur a loss of benefits, and will incur a loss of benefits in the future.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendants for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT VI
## DISCRIMINATION AND RETALIATION – FAILURE TO HIRE

167.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

168.    Plaintiff engaged in protected activities when he reported disability discrimination by association to Defendant PB&J **and Defendant SLLV**.

169.    Defendants were in the process of coordinating transfer of ownership of the restaurant and were aware of Plaintiff's protected complaint and use of FMLA for all times relevant herein.

170.    Plaintiff filed a formal Charge with the EEOC alleging specific disability discrimination against Defendant PB&J **and Defendant SLLV** from the restaurant.

- 24 -

171.    Defendant PB&J **and Defendant SLLV** took adverse employment action against Plaintiff when it ended his employment on January 26, 2023, when it told him he did not need to come into work for the rest of the week.

172.    Defendant Falcons took adverse employment action against Plaintiff when it informed him his employment would be terminated on or about January 30, 2023.

173.    Plaintiff was the only member of management that Defendant Falcons did not continue employment for.

174.    There is a causal connection between Defendant's adverse actions and Plaintiff's engagement in protected activities because he was the only employee that reported FMLA interference and disability discrimination, and he was also the only employee fired during the transition.

175.    Plaintiff applied for open and available management positions that Defendant Falcons was actively hiring for after his termination.

176.    Defendant Falcons refused to consider Plaintiff for employment.

177.    Upon information and belief, Defendant Falcons refused to consider Plaintiff for employment when he applied to other positions because he had previously engaged in statutorily protected activities, including but not limited to making protected complaints for discrimination and filing a Charge with the EEOC.

178.    As a direct and proximate result of Defendants' failure to hire Plaintiff, he has incurred past loss of benefits and wages, continues to incur a loss of benefits, and will incur a loss of benefits in the future.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendants for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a **TRIAL BY JURY** in the United States District Court, Eastern District of Missouri, as to any and all counts and/or allegations alleged in this Petition for Damages.

Respectfully submitted,

SPARKS LAW FIRM

By: Paige Sparks
Paige Sparks, #72143MO
Samantha J. Sparks, #72058MO
2025 Zumbehl Road, #102
St. Charles, MO 63303
Phone: (636) 373-9375
Fax: (314) 451-2567
paige@sparks-legal.com
sam@sparks-legal.com

*COUNSEL FOR PLAINTIFF*